[No. 12801.   Department Two. — September 27, 1890.]

CHARLES ALPERS, Appellant, v. JOHN HUNT,
Executor, etc., Respondent.

Review upon Appeal — Order Granting New Trial — Sufficiency of
Complaint — Illegality of Contract — Nonsuit — Evidence. — Upon
appeal from an order granting a new trial, the sufficiency or insufficiency
of the complaint may be considered where it appears that the new trial
was granted for error in denying a nonsuit, the nonsuit being asked for
on grounds that challenged the sufficiency of the complaint, in that it
set forth a contract on which an action could not be maintained; and as
the trial court in granting the new trial could not go beyond the grounds
on which it was asked, and granted it on the sole ground that the con-
tract sued upon is contrary to public policy, the contract being alleged

in the complaint alone, the appellate court, in passing upon the question as to the character of the contract, is limited to what appears in the complaint, and cannot consider the evidence introduced on the trial.

ID. — REVIEW OF NONSUIT — ERROR OF LAW — BILL OF EXCEPTIONS — NEW TRIAL. — The ruling of the court on defendant's motion for a nonsuit, and his exception thereto, may be set forth in a bill of exceptions or in a statement on motion for a new trial, and he is entitled to have it re-viewed on motion for a new trial as an error of law occurring at the trial; and whether the court grants or refuses a new trial for such alleged error, its action may be reviewed upon appeal from the order.

CONTRACT — VIOLATION OF LAW — PUBLIC POLICY — ATTORNEY AND CLIENT — AGREEMENT TO PROCURE CLIENT FOR SHARE OF FEE. — A contract between a third person not an attorney and an attorney and counselor at law, that he will procure the attorney's employment by a litigant, and that in consideration of such procurement he is to have from the attorney so employed one third part of whatever remuneration the latter receives for his services from the litigant, is contrary to public policy and invalid.

ID. — RIGHTS OF ASSIGNEE. — An assignee of such a contract takes only the rights of the assignor, and cannot recover upon it if his assignor could not recover.

APPEAL from an order of the Superior Court of the city and county of San Francisco granting a new trial.

The facts are stated in the opinion of the court.

·R. Percy Wright, for Appellant.

Matt I. Sullivan, for Respondent.

THORNTON, J. — This is an action brought by the plaintiff, as assignee of William L. Bolte, against John Hunt, executor of the last will and testament of George F. Sharp, to recover a sum of money claimed to be due on a contract alleged to have been made by Sharp and J. C. McCeney with plaintiff's assignor. On the trial verdict and judgment passed for plaintiff. Defendant moved for a new trial, which was granted, and from the order granting the motion plaintiff appealed.

The main question to be determined herein arises on the complaint. The averments of the complaint set forth that, prior to the first day of August, 1878, George F. Sharp and Julius C. McCeney were attorneys at law,

practicing their profession in the city and county of San Francisco; that in August, 1878, Mrs. Volina E. Harrigan was the owner of and claimed an interest in the estate of Eliza Haskell, deceased, which claim was contested by other persons, and required the services of attorneys at law for its enforcement; that, about the time last mentioned, Sharp and McCeney agreed with one William L. Bolte, that if he, Bolte, would procure Mrs. Harrigan to employ them as attorneys at law in the matter of her interest and claim, above mentioned, he, Bolte, should be entitled to and should have one third part of whatever should be received by them, or either of them, by reason of and under said employment; that thereupon Bolte procured Mrs. Harrigan to employ them as attorneys at law in the matter of her interest and claim; that, in pursuance of the arrangement thus brought about by Bolte, Mrs. Harrigan entered into a contract with Sharp and McCeney, whereby, in consideration of their professional services to be rendered in and about her said interest and claim. she agreed to give them one third part of whatever share of the estate of Mrs. Haskell she might become entitled to or receive by way of compromise, or otherwise; that Sharp and McCeney duly performed all the conditions of their said contract, and by such services she became entitled to a large amount of property, a part of the estate aforesaid; that Mrs. Harrigan thereupon agreed upon a certain sum of money to be paid Sharp and McCeney in satisfaction of their claim against her under the contract above stated, which they agreed to accept; that, in pursuance of this agreement, Mrs. Harrigan executed to them a promissory note for the sum of $14,400, bearing date the thirty-first day of January, 1880, payable two years after its date, with interest, at the rate of seven per cent per annum; that, to secure the payment of this note, Mrs. Harrigan, with others, executed to Sharp and McCeney a mortgage upon certain real property; that afterwards

McCeney assigned all his interest in the note and mortgage to Sharp; that the note and mortgage were subsequently sold by Sharp for the sum of $17,964.18, which was paid to him; that no part of said sum of money was ever paid to plaintiff or his assignor, Bolte.

Other averments are made in the complaint, setting forth the relations of the parties, and material to show plaintiff's right to maintain this action, but as they have no bearing on the question necessary to be determined herein, need not be stated. On the trial, the plaintiff having put in his evidence and rested, the defendant moved for a nonsuit, on the ground, among others, — 1. That the alleged contract between McCeney and Sharp and Mrs. Harrigan is against good morals and public policy; and 2. That the alleged contract between Sharp and McCeney and William L. Bolte is against good morals and public policy. The motion was denied, and the defendant excepted. A verdict having been rendered for plaintiff, defendant moved for a new trial on a statement. In it he assigns as an error of law occurring at the trial, and excepted to by him, the denial of his motion for a nonsuit. On the hearing of the motion for a new trial, the court granted it " on the sole ground [as appears from the transcript] that the contract sued upon is contrary to public policy." As above stated, the motion for a nonsuit has reference only to the contract alleged, and the error of law set out in the statement is of the same import. The contract is alleged in the complaint alone. The motion for a nonsuit must then be determined on the allegations of that pleading. The court must have granted the new trial for the reason that the contract set forth in the complaint was contrary to public policy, for from the complaint only can we ascertain the contract sued on. And here we may remark that, according to the well-settled practice, the court below could not, in passing on the motion for a new trial, go beyond the grounds on which the new trial

was asked; and, in holding the action of the court to
have reference only to the contract set forth in the com-
plaint, we confine the course pursued by the court to the
contract alleged therein, and to the grounds on which
the defendant asked for a nonsuit. From the foregoing
it is clear that, in passing on the question as to the char-
acter of the contract, the court is limited to what is stated
by plaintiff in setting forth his cause of action, and that
the evidence introduced on the trial cannot be con-
sidered.

But it is argued by counsel for appellant (plaintiff be-
low) that on an appeal, as this is, from an order granting
a new trial, the sufficiency of the complaint cannot be
considered. To support this contention counsel make
reference to several cases decided by this court, viz.: *Spa-
nagel* v. *Dellinger*, 38 Cal. 283; *People* v. *Turner*, 39 Cal.
372; *Mason* v. *Austin*, 46 Cal. 385; *Jacks* v. *Buell*, 47 Cal.
162; *Onderdonk* v. *San Francisco*, 75 Cal. 534; and *Wheeler*
v. *Kassabaum*, 76 Cal. 90.

In the cases cited the question presented is entirely
unlike the one presented here. In this case the defend-
ant moved for a nonsuit on grounds that challenged the
sufficiency of the complaint, in that it set forth a con-
tract on which an action could not be maintained. The
nonsuit was denied, and an exception was regularly re-
served. The defendant then found himself in a position
where he had a right to have the ruling of the court on
his motion reviewed on a motion for a new trial. The
ruling of the court on defendant's motion for a nonsuit,
and his exception thereto, could be set forth in a state-
ment or bill of exceptions as an error of law occurring
at the trial, and there excepted to by him that it might
be reviewed as above set forth. This right was assured
to him by the provisions of the statute. (Code Civ.
Proc., sec. 657, subd. 7, secs. 658, 659.) On the hearing
of the motion for a new trial, the court *a quo* had an
opportunity of reversing its former action. If it ap-

proved its previous ruling, the motion for a new trial would be denied. If its previous ruling was, in its judgment, erroneous, it was empowered to recall it and grant a new trial. On such hearing it was in the line of the regular procedure to confirm its former action or disapprove and recall it. Such course the law sanctions as applicable to all errors of law. An error committed in passing on a motion for a nonsuit constituted no exception to the rule.

Whether the court denied or granted a new trial, its action was subject to be revised on appeal. The plaintiff had a right to appeal from the order granting a new trial, and his appeal would bring before the court the action of the court below as to every question germane to the inquiry whether the lower court's action was in accordance with law or not. If the court below had on the trial committed an error for which it was proper, on its being regularly brought before it, to grant a new trial, this court would approve and affirm the action of such court in granting such relief. If, on the contrary, no such error had been committed, if the court below had on the trial before it ruled correctly, this court would, in accordance with such view, hold the order granting a new trial erroneous, and reverse it. This is the usual course of practice in the courts of this state, and we see nothing in it foreign to the procedure prescribed by law. It has been a practice, not unusual in our courts, to ask a trial court to instruct the jury, when the complaint did not state facts sufficient to constitute a cause of action, to find a verdict for defendant. Whether given or refused, such ruling could be reviewed on motion for a new trial; and on the hearing of this latter motion, whether favorable or adverse to the motion, an appeal could be prosecuted from the order granting or refusing the new trial, and the action of the trial court passed on in this court, and either approved or set aside. We see nothing irregular here in having the

question made on the motion for a nonsuit considered
and passed on in this court, though it does go to the
sufficiency or insufficiency of the complaint.  The ques-
tion comes before us in the regular course of procedure,
and the legal exigencies of the case demand that it be
considered and determined.  If this court failed to pass
on the point, it would in effect hold that there was error
of law occurring at the trial, and there excepted to,
which could not be reviewed on a motion for a new
trial, and that, too, when the statute regulating the pro-
cedure in our courts had provided that all such errors
should be so reviewed.  There is nothing in the cases
cited by counsel for appellant in conflict with what is
stated above.  In our judgment, the question is regularly
presented here for decision, and the respondent is enti-
tled to have it determined.

Is the contract set forth in the complaint contrary to
public policy or good morals?  Such is the question pre-
sented to us for determination.  That contract is in sub-
stance this:  A third person, not an attorney and counselor
at law, enters into an agreement with an attorney and
counselor at law that he will procure his employment by
a litigant, and that in consideration of such procurement
he is to have from the attorney and counselor so em-
ployed one third part of whatever remuneration the attor-
ney receives for his services from the litigant.  Is such
a contract void, as contended, is the point presented for
consideration and decision.  Courts are justified in de-
claring a contract void as against public policy, when it
is expressly or impliedly forbidden by the paramount
law, or by some principle of the common law, or by the
provisions of a statute.  As said by Chase, C. J., in the
*License Tax Cases*, 5 Wall. 469: "This court can know
nothing of public policy except from the constitution
and the laws, and the course of administration and de-
cision."  The policy of the state "can be ascertained
only by reference to the constitution and laws passed

under it, or, which is the same thing, to the principles underlying and recognized by the constitution and laws." (*Lux* v. *Haggin*, 69 Cal. 308.) Though public policy is a doctrine on which courts and judges should proceed with caution, still there are many cases to be found in the books of reports in which the doctrine has been applied. Marriage brokerage bonds, contracts in restraint of trade, contracts by expectant heirs, or in consideration of illicit cohabitation, or such contracts as may injuriously affect the administration of justice, or to procure a contract from a public officer, or to pay for an appointment to office, or aiding in procuring an appointment, or to pay for obtaining a pardon, or injuriously affecting the public interest as to the location of the terminus of a railroad, afford instances of the application of the doctrine. (See 5 Rob. Pr., c. 42, pp. 407, 433, where many cases are cited and commented on.)

In considering this question, our attention must necessarily be given to the statutes of this state, in regard to attorneys and counselors at law. They are to be found in the Code of Civil Procedure, and in the sections to which reference will be herein specially made. The following provisions will be found in the statute: Any citizen or person resident of this state who has *bona fide* declared his intention to become a citizen in the manner required by law, of the age of twenty-one years, of good moral character, and who possesses the necessary qualifications of learning and ability, is entitled to be admitted as an attorney and counselor at law in all the courts of this state. (Code Civ. Proc., sec. 275.) Every applicant for such admission must produce satisfactory testimonials of good moral character, and undergo a strict examination as to his qualifications in open court. (Sec. 276.) If, upon examination, he is found qualified, he shall be by the court admitted. as such attorney and counselor, by an order entered to that effect upon its records, and a certificate of such

record shall be given to him by the clerk of the court, which certificate shall be his license. (Sec. 277.) On his admission, he must take an oath to support the constitution of the United States and the constitution of this state, and faithfully to discharge the duties of an attorney and counselor to the best of his knowledge and ability. (Sec. 278.) A roll of attorneys is to be kept by a prescribed public officer, which the applicant, on his admission, is required to sign. (Sec. 280.) Any person practicing law in any court, except a justice's court or a police court, without having received a license as attorney or counselor, is declared to be guilty of a contempt of court. (Sec. 281.) Section 282 of the same code prescribes the duty of an attorney and counselor, by the provisions of which he is required, *inter alia*, to support the constitution and laws of the United States and this state, and to maintain the respect due to the courts of justice and judicial officers. Rules of duty are further prescribed in this section, which are intended to regulate and control the conduct of an attorney and counselor with regard to the public, and to those in whose behalf they appear in court, and exercise their appropriate functions. Authority is conferred on him in the discharge of his duties and functions, peculiar to his character as such. (Sec. 283.) He is subject to the authority of the courts, and may be, for cause shown, suspended or removed, and deprived of the right to pursue his profession by the supreme court, or either department thereof, or by a superior court. (Sec. 287.) One of the causes for which he may be removed or suspended is the following: "Lending his name to be used as attorney and counselor by another person who is not an attorney and counselor." (Sec. 287, subd. 4.)

The foregoing provisions taken from a public statute are enacted not only in the interest of those who employ the services of attorneys, but in the interest of the community or public at large. They concern the adminis-

tration of justice, always a subject of public concernment, and relate to a class of officers of courts in which the people of the state have an abiding interest. Bolte was never an attorney and counselor at law. ' He had never been admitted to the privileges or authorized to exercise the rights of an attorney and counselor. He had never assumed or been authorized to assume any of the functions of an attorney and counselor, nor was he bound by the obligations of such a position.

Now, if either of the attorneys who contracted with Bolte had lent to the later his name to be used by him as attorney and counselor, he would have been guilty of a violation of the clause above quoted from section 287 of the Code of Civil Procedure, for which he would have been liable to be removed or suspended from the practice of his profession. Was not Bolte really allowed to use their names in the prosecution of a matter in litigation? Under the employment of them as attorneys, made through Bolt's procurement, they engaged to use their faculties as attorneys and counselors at law for his benefit, and that, too, in a cause in which he had no interest as a party. By the terms of the agreement he was to derive a benefit from the rendition of their services in their professional capacity, and to receive a share of their fee, as if he had been concerned with them as a regularly admitted attorney. He is thus enabled, through their agency, vicariously, and not openly and in his own name, to aid in the prosecution of a matter in litigation, and to receive through it such a reward as is usually gained by an attorney regularly admitted to exercise his profession. An attorney is prohibited to allow the direct use of his name as an attorney and counselor at law under the circumstances disclosed by the complaint in this case. Of what avail is such prohibition, if it can be, by such indirection as is practiced in this case, evaded ? We are of opinion that the facts here disclose a case of indirect violation of the clause referred to, which

is as much forbidden as a direct violation. If such a practice were allowed, an attorney might have a number of undisclosed associates through his agency exercising the functions of an attorney and counselor, and reaping the rewards flowing therefrom, without resting under any of the responsibilities incident to such a position, and possessing none of the qualifications which the law demands and requires. Such a practice would tend to increase the amounts demanded for professional services. In such a case an attorney would be induced to demand a larger sum for his services, as he would have to divide such sum with a third person.

We have examined *Bunn* v. *Guy*, 4 East, 190, and *Candler* v. *Candler*, Jacob, 225, cited by counsel for appellant to sustain the validity of the contract sued on. We do not consider them applicable to the case before us. The office of attorney in England is entirely different from that of an attorney and counselor in this state. In England the fees of an attorney are fixed by statute, or rules of court, or orders in council, and his bill of costs and charges for disbursements are subject to be taxed by a taxing officer, and the taxation reconsidered by such officer. The decision of the taxing officer can also be revised by the judge on appeal. (Weeks on Attorneys at Law, secs. 324, 325, et seq.)

We cannot suppose that the fact that the attorney has to share the amount of his bill with an outsider would at all affect the amount allowed him. That amount would be the same regardless of the circumstance that he was bound by his agreement to divide it with another. The laws of England regulating the appointments, duties, and conduct of attorneys have not been brought to our notice, and therefore we cannot determine how far the laws there prevailing permit or recognize as legal a contract made by an attorney to share his fees with a third person. Under such circumstances this court could not, with any confidence, pronounce any judgment

as to how such a contract would be affected by English statutes or rules of court.

In *Bunn* v. *Guy*, 4 East, 190, the validity of a contract between attorneys was called in question. A practicing attorney (Carpenter) agreed for a valuable consideration to relinquish his business and recommend his clients to two other attorneys (Bunn and Guy), and that he would not himself practice within certain limits, and would permit them to make use of his name in their firm for a certain time, without any interference on his part. The question arose in chancery concerning the marshaling of assets, and a case stating the above contract was sent by the lord chancellor to the court of king's bench for its opinion. The court certified their opinion to the court of chancery that the contract above stated was good in law.

In *Candler* v. *Candler*, Jacob, 225, an agreement by an attorney to pay a share of the profits of his business to the widow of his deceased father, who had been an attorney, was held valid. The agreement was made by deed between the widow of Henry Candler, the deceased father, and their son Henry Candler. It was recited in the deed that the agreement was entered into under a due sense of the influence which his mother and family could retain with his father's clients and connections, and the widow (Mary Candler) covenanted to use her utmost endeavors and influence to induce her friends and connections to employ him. The lord chancellor (Eldon), in delivering his judgment, said: "I have thought that, consistently with the policy of the law, agreements could not be made by which they [referring to attorneys] contract to recommend those who succeed them. I doubted whether professional men could be recommended, not for skill and knowledge in their profession, but for a sum of money paid and advanced. I knew that this would rip up many transactions, and I was happy that the court of king's bench was of a different

opinion, though I never could entirely reconcile myself to their doctrine."

The opinion in *Bunn* v. *Guy,* 4 East, 190, was here referred to by Lord Eldon. In our judgment, the remarks of Lord Eldon, quoted above, may well create a strong doubt as to the correctness of the conclusion reached in *Bunn* v. *Guy,* 4 East, 190. However, for the reasons above given, we cannot follow the rulings in the cases just noticed. It is clear that the right of the plaintiff to recover herein is the same as that of his assignor, Bolte. If the latter cannot recover, neither can the plaintiff, his assignee. The considerations expressed herein have led this court to the conclusion that the contract sued on, and alleged in the complaint, is forbidden by the policy of the law, and void, and that the court below erred in denying the defendant's motion for a nonsuit. The motion for a new trial was, therefore, properly granted, and the order appealed from must be affirmed. The view taken herein disposes of the case, and it becomes unnecessary to pass on the other questions raised by counsel for appellant.

Order affirmed.

McFarland, J., and Sharpstein, J., concurred.

Hearing in Bank denied.