[Sac. No. 3124. In Bank.—March 16, 1922.]

## THE BANK OF ORLAND (a Corporation), Appellant, v. T. W. HARLAN, Respondent.

[1] APPEAL—VERDICT—WHEN CONCLUSIVE.—A verdict, if supported at all by evidence setting out a reasonably credible story, is conclusive on appeal.

[2] BANKS AND BANKING—FALSE ENTRIES—PENALTIES.—It is a crime for any officer, director, trustee, or agent for any bank organized under the laws of this state to make an untrue entry in any book or any report, tag, or statement of the business affairs or conditions, in whole or in part, of such corporation with intent to deceive any agent or examiner, private or official, employed or lawfully appointed to examine into its condition; and every such officer or agent who, with intent to defraud, knowingly omits to make or cause or direct to be made a full and true entry on the books or accounts of such corporation of the property thereof, or omits or concurs in omitting to make any material entry in any book of accounts or records or document kept by such corporation, is punishable by imprisonment; and even in the absence of any penal statute any such conduct would be a fraud on the creditors and depositors, and any person participating or conniving at such concealment or deceit by the bank officials would be tainted with the same fraud.

---

2. Civil liability of bank director for making false report or statement as to bank's condition, note, 4 **Ann. Cas.** 426.

[3] ID. — DELIVERY OF SECURITIES TO COVER OVERDRAFT — MISREPRE-
SENTATION TO BANK EXAMINER.—Where the owner of securities
delivered them to a bank, to cover overdrafts made by his brother
upon the bank while the books of the bank were being examined
by the bank examiner, the transaction being for the purpose of
deceiving the bank examiner as to the bank's financial condition,
public policy forbids that the courts should aid the owner of the
securities in recovering them.

[4] CONTRACTS—PUBLIC POLICY—RELIEF.—A contract which is against
public policy, good morals, or the express mandate of law cannot
be made the basis of either legal or equitable relief in the courts;
and where the parties are in *pari delicto,* neither can recover, it
being the policy of the law to leave the parties precisely where it
finds them.

[5] ACTION ON PROMISSORY NOTE — CONVERSION OF MORTGAGED PROP-
ERTY — DEFENSE SEEKING RETURN OF SECURITIES — FRAUDULENT
TRANSACTION—RELIEF.—In an action on a promissory note exe-
cuted by defendant to plaintiff and for the conversion of certain
personal property covered by a mortgage assigned by defendant
to plaintiff, in which defendant affirmatively seeks to recover the
note and mortgage and other securities on the ground that they
were assigned for a limited and temporary use, where the plaintiff
stated and made *prima facie* proof of a good cause of action,
but defendant pleaded and proved by way of defense facts which
showed not only that the note and assignments were given without
consideration, but for the purpose of perpetrating a fraud under
the banking laws of this state, neither party can recover.

[6] ID.—VIOLATION OF PENAL LAWS BY OFFICERS OF BANK—PARTICI-
PATION IN BY OTHER PARTY.—The fact in such a case that only
the plaintiff is amenable to the penal statutes does not prevent the
defendant from being *in pari delicto* as to the fraud and deceit
involved.

[7] ID.—FRAUDULENT CONTRACT—PROOF OF.—In such a case it is im-
material whether the facts showing the unenforceable nature of the
contract appear from the pleadings or not; where the evidence
discloses the relations of the parties to the transaction are illegal
and against public policy, the court will act on its own motion.

APPEAL from a judgment of the Superior Court of
Glenn County. William M. Finch, Judge. Reversed.

The facts are stated in the opinion of the court.

Arthur C. Huston, W. T. Belieu and W. E. Johnson for
Appellant.

Frank Freeman, George R. Freeman and Duard F. Geis
for Respondent.

SLOANE, J.—Plaintiff brought its action to recover on a promissory note executed by defendant to plaintiff, and for the conversion of a certain crop of barley covered by a mortgage assigned by defendant to plaintiff. Defendant by his answers pleaded by way of defense and for affirmative relief that the note was executed and the crop mortgage and other securities were assigned to plaintiff for a limited and temporary use, with the agreement that they would within a specified period be surrendered and returned to defendant.

The two actions were consolidated and tried before a jury, and a verdict and judgment rendered in favor of defendant awarding him the return and possession of such note and securities. From this judgment the plaintiff appealed.

The appeal was first heard before the third district court of appeal, where the judgment was affirmed. A rehearing was granted in this court for the purpose of further consideration of the questions of law involved.

The following statement of the case and conclusions of the district court of appeal are adopted as part of this opinion:

"The appellant makes but two points. The first is the insufficiency of the evidence to justify the verdict. The second is error in giving a certain instruction. As to the first, it is sufficient to say that the evidence was sharply conflicting on the disputed point. [1] The verdict, if supported at all by evidence setting out a reasonably credible story, is conclusive on appeal. The appellant insists, however, that the version of the matter tendered by the respondent is so inherently improbable that, as a matter of law, it must be held that it is not true. We cannot accept this view. It is quite true that the transaction was an unusual one, but the conditions which brought it forth were somewhat unusual. The appellant had permitted one G. B. Harlan, a brother of the respondent, to overdraw his account to the extent of some thirteen thousand dollars and wholly without security. The significance of this large overdraft is appreciated when it is recalled that the entire capital stock of the appellant bank is but fifty thousand dollars, and that an overdraft in this amount, being more than ten per cent of the capital stock, is permitted in vio-

lation of law.  The appellant was expecting an official visit from the bank examiner and it was apprehensive that that official would criticise its acts in the matter.  In this emergency, the appellant applied to the respondent to furnish security in behalf of G. B. Harlan.  The respondent at first refused; but being assured that the securities were desired only for a temporary purpose and would be returned to the respondent as soon as certain other specified securities were obtained, he responded to the request and placed in the hands of appellant the various securities here in suit.  The respondent, in his answer, pleads this contract in full, sets out a description of these securities, and avers that the appellant agreed that it would rely upon these other securities and return to the respondent those furnished by him.  It is further set out that it was mutually understood that these other securities would be substituted within about ninety days.  In support of the verdict, it will be assumed that the jury found in favor of the respondent on such of these issues as are necessary to support the judgment.''

The real question in dispute is whether the facts as stated and accordingly found by the verdict of the jury support the affirmative relief granted the defendant.

To elaborate a little more fully the testimony as to this transaction as given in behalf of the defendant, it is fairly made to appear that G. B. Harlan, a brother of the defendant, T. W. Harlan, was being financed by the plaintiff bank in a contract for state highway construction; that he had overdrawn his account in the sum of thirteen thousand dollars, which overdrafts were unsecured.  At a meeting arranged by G. B. Harlan with the bank officials, which the defendant had been invited to attend, it developed that the bank officials were expecting a visit from the bank examiner and were very desirous to obtain collateral security to cover these overdrafts before opening their books to the examiner.  The defendant was in no way obligated to the bank or to his brother on account of this indebtedness.  He was first asked if he would not furnish security on behalf of his brother.  This he positively refused to do.  He was then asked if he would loan his credit and securities to the bank temporarily until it would have an opportunity to substitute other securities from the business resources of

G. B. Harlan, which they represented would materialize in about ninety days. These anticipated securities were to consist of certain assignments on account of the highway contract of G. B. Harlan and a mortgage upon a rice crop to be planted and grown under a lease in which he was interested.

To put it in the words of the defendant: "They simply asked me if it would be possible for me to loan them sufficient securities, to keep away the bank examiner, so they could keep this amount of money whole, so that in the spring when Harlan [G. B.] was supposed to have the securities he had stated to them they would have, that they could take the security from him and return my securities to me. . . . I enumerated the securities that I did have that I would not need for two or three months, and if it would be of any benefit to them, if they would return them to me I would let them have them, and that was done."

He further testified that the bank accepted these securities and the note under the unqualified agreement to return them in ninety days, and that this agreement was not contingent upon the bank being able to substitute the securities expected from G. B. Harlan. In the language of the witness, referring to the director who was spokesman for the bank at this conference, "He was to give me back the securities irrespective of the mortgage."

This statement of the agreement was corroborated by the testimony of G. B. Harlan.

This version of the transaction is vigorously denied on behalf of the plaintiff, whose witnesses testify that the securities advanced by defendant were given in for the benefit of his brother and were only to be returned when other satisfactory security was deposited in his behalf.

If such was the arrangement it would have been entirely legitimate; but in view of the verdict of the jury we are bound to accept the controlling force of the evidence most favorable to the defendant.

It is contended on behalf of appellant, however, that under the most favorable interpretation of defendant's story, the contract was made in furtherance of a fraud in an attempt to cover up the deficit in the bank's assets and to deceive and mislead the bank examiner. In such a case the courts will not aid either party in its enforcement.

Such would clearly be the application of the law if the effect of this agreement was purely fictitious, and for the sole purpose of deceiving the bank examiner, without any provision for substituting other securities for those to be surrendered.

The transaction as testified to by respondent under the conditions pleaded amounts to the same thing.

Even conceding that both parties were sincere in the expectation that sufficient manna would be sent down from Heaven to replace respondent's securities within ninety days, such was not the result. Both parties must have known that G. B. Harlan's affairs bordered on insolvency; that the prospects from highway profits and crop mortgage were exceedingly nebulous. Yet, according to respondent's story and the implied findings of the jury, the bank and respondent connived at a plan to so fix the bank's securities as to make it appear to the bank examiner that this note and the hypothecated mortgages were held by the bank in the ordinary course of business to cover this thirteen thousand dollar overdraft. The arrangement entered into, as sought to be enforced, reaches precisely this result. The bank having failed to obtain new securities at the end of the ninety days is left once more with this unprotected overdraft upon its hands.

In other words, the defendant was not relying upon the credit of some third party to release his note and securities, but upon the promise of the bank to return them whether redeemed by other security or not. The parties were gambling upon the ability of the bank to procure other security. The transaction to be presented to the bank examiner was not what it seemed on its face. It was a state of affairs that no bank would dare disclose to the examiner, an overdraft for thirteen thousand dollars, secured by collateral paper which was subject to withdrawal and cancellation after ninety days, with the bare contingency that the insolvent debtor might be able by that time to protect the dishonored paper. There was nothing on the books to indicate that this overdraft was not substantially and permanently protected. If the true state of the case as found by the jury was to be disclosed to the bank examiner, it must have been obvious to both parties that it would not for an instant pass inspection. They may have hoped and in-

tended in some way to keep this security good, but to enter upon this contract to restore to respondent his securities, irrespective of substituting other indemnity, was to make the transaction upon the bank's books fictitious and misleading.

[2] Section 563a of the Penal Code declares it a crime for any officer, director, trustee, or agent for any bank organized under the laws of this state to make an untrue entry in any book or any report, tag, or statement of the business affairs or condition, in whole or in part, of such corporation with intent to deceive any agent or examiner, private or official, employed or lawfully appointed to examine into its condition. Section 563 of the Penal Code provides that every officer or agent of any corporation who, with intent to defraud, knowingly omits to make or cause or direct to be made a full and true entry on the books or accounts of such corporation of the property of the corporation, or omits or concurs in omitting to make any material entry in any book of accounts or other record or document kept by such corporation, is punishable by imprisonment. Even in the absence of any such penal statute any such conduct would be a fraud upon the creditors and depositors, and any person participating or conniving at such concealment or deceit by the bank officials would be tainted with the same fraud.

Under section 5209 of the Revised Statutes of the United States [6 Fed. Stats. Ann., 2d ed., p. 770; U. S. Comp. Stats., sec. 9772], corresponding with the sections of the Penal Code cited, the supreme court of the United States in *Cross* v. *State of North Carolina*, 132 U. S. 132 [33 L. Ed. 287, 10 Sup. Ct. Rep. 49 [see, also, Rose's U. S. Notes], dealing with the question of fictitious assets, uses this language: "If the notes in question had not been forged, but with or without the consent of the obligors had been temporarily placed by defendants among the assets of the bank and entered upon its books, when they were not its property, with intent to deceive the agent appointed to examine its affairs, they could have been punished under section 5209." While the law does not impose the penal liability for such a deal upon participants not officials of the corporation, that fact cannot relieve them from the moral opprobrium of the act.

Appellant cites the decision of Judge Ross in the case of *Pauly* v. *O'Brien* (C. C., S. D. Cal.), 69 Fed. 460, in support of the illegality of this contract, but also of the contention that the respondent is nevertheless liable to the bank in this action.

The case cited fairly illustrates the illegality of the transaction before us, but does not put the appellant bank in the favorable position claimed. In the cited case the California National Bank of San Diego had procured a note from one of its employees to take the place of and cover up the insufficiency of paper of an insolvent debtor for the purpose of deceiving the bank examiner. The bank subsequently went into the hands of a receiver and the suit was by the receiver on the note. Judge Ross in the opinion says:

"Undoubtedly, the transaction in question originated with the officers of the bank, but to it the defendant became a willing party. It would require more credulity than I possess to believe that the defendant, when his brother, who was the bookkeeper of the bank, came to him with the proposition of its vice-president, in its every suggestion and essence deceptive and fraudulent, did not know its true character and purpose. So far as appears, Naylor was a total stranger to him. Why should he execute his note to take up the note of Naylor? What moved him to do it, except to enable the officers of the bank to supplant the overdue note of Naylor with a live note, which he now insists was without consideration and purely voluntary, but which enabled the bank officers to make a deceptive and therefore a fraudulent showing of assets? Obviously, nothing."

In its inception and execution that transaction was closely analogous to the one presented in this action, and if here, as there, the action had been brought in behalf of the creditors, the defendant might properly be held estopped from showing that his obligation was different from what it appeared on its face.

The other citations by appellant upholding the right of the payee to recover, notwithstanding the contract was made in violation of law (*Blochman Bank* v. *F. G. Investment Co.*, 177 Cal. 763 [171 Pac. 944]; *Brittan* v. *Oakland Bank of Savings*, 124 Cal. 282 [71 Am. St. Rep. 58, 57 Pac. 84]),

are not in point. In both of these cases the transaction was one restricted by law for the benefit of the bank and its depositors, and the defendants had received full consideration for the notes sued on. In the one case, the bank had made loans in excess of the limitations imposed by law, and in the other, had loaned money to one of its directors in violation of the law. It was said by this court in each of these decisions that the defendant could not take advantage of the situation "as the violation of the provision in question could only be availed of at the instance of the state or sovereign power."

[3] In the case at bar under the facts as found the bank parted with no value for the respondent's securities, and the respondent received no consideration therefor. The bank is not insolvent, the rights of creditors are not involved, and it would be indefensible to allow it to profit by its own wrong. On the other hand, the respondent, according to his own statement, made himself a party to a transaction intended to deceive and mislead the bank examiner as to the financial condition of the appellant bank. Public policy forbids that the courts should aid him in escaping from his dilemma.

[4] The rule that a contract which is against public policy, good morals, or the express mandate of law cannot be made the basis of either legal or equitable relief in the courts requires no citation of authorities. And where the parties are *in pari delicto* neither can recover. It is the policy of the law to leave the parties precisely where it finds them.

Applying this doctrine to the parties to this action we are confronted with this situation.

[5] The plaintiff stated and made *prima facie* proof of a good cause of action both as to the promissory note and the conversion of the property covered by the assigned mortgage. The defendant pleaded and proved by way of defense facts which showed not only that the note and assignments were given without consideration but for the purpose of perpetrating a fraud under the banking laws of this state. Under this state of the facts the plaintiff cannot recover (*Union Collection Co.* v. *Buckman,* 150 Cal. 159 [119 Am. St. Rep. 164, 11 Ann. Cas. 609, 9 L. R. A. (N. S.) 568, 88 Pac. 708]; *Gridley* v. *Dorn,* 57 Cal. 78 [40 Am. Rep. 110]; *Thom* v. *Stewart,* 162 Cal. 413 [122 Pac. 1069]; *Al-*

pers v. *Hunt*, 86 Cal. 78 [21 Am. St. Rep. 17, 9 L. R. A. 483, 24 Pac. 846]; *Ball* v. *Putnam*, 123 Cal. 134 [55 Pac. 773]). On the other hand, the defendant has placed himself in a position where, in seeking the return of his note and securities, his only ground for such affirmative relief is in reliance upon this same indefensible contract. He entered into the arrangement voluntarily, and although not himself benefited by the transaction assumed an equal moral responsibility with the plaintiff. Both parties connived at this attempt to deceive the bank examiner. **[6]** The fact that only the appellant is amenable to the penal statute does not prevent the respondent from being *in pari delicto* as to the fraud and deceit involved. In this case both parties understood the purpose, the nature and the probable result of the agreement they entered into. The respondent, while not financially interested and acting, it may be conceded, for the accommodation of the appellant, proceeded voluntarily and without undue influence of any kind. He, therefore, cannot escape his share of the responsibility (*Colby* v. *Title Ins. etc. Co.*, 160 Cal. 632 [Ann. Cas. 1913A, 515, 35 L. R. A. (N. S.) 813, 117 Pac. 913]; *Exchange Bank* v. *Center State Bank*, 100 Neb. 278 [159 S. W. 409]).

Neither party is entitled to relief in this case. The courts will leave them where they were when the action was begun. **[7]** It is immaterial whether the facts showing the unenforceable nature of the contract appear from the pleadings or not; where the evidence discloses the relations of the parties to the transaction are illegal and against public policy the court will act on its own motion. (*Morrill* v. *Nightingale*, 93 Cal. 452 [27 Am. St. Rep. 207, 28 Pac. 1068]; *Kreamer* v. *Earl*, 91 Cal. 112 [27 Pac. 735]; *Vulcan Powder Co.* v. *Hercules Powder Co.*, 96 Cal. 510 [31 Am. St. Rep. 242, 31 Pac. 581]; *Pacific Wharf & Storage Co.* v. *Standard Am. Dredg. Co.*, 184 Cal. 24 [192 Pac. 847].)

The judgment is reversed.

Waste, J., Lawlor, J., Wilbur, J., Shaw, C. J., and Shurtleff, J., concurred.

Rehearing denied.

In denying a rehearing the court filed the following opinion on April 14, 1922:

THE COURT.—In a petition for rehearing the plaintiff urges that the circumstances of this case bring it within an exception to the rule that *"in pari delicto potior est conditio defendentis,"* because the good of the public is involved, and that the public good demands that the defendant's obligation be enforced.

The good of the public is not involved in this case unless some other party than the plaintiff is concerned or interested therein. If the plaintiff is solvent and able to pay its debts, including those due its depositors, notwithstanding the loss of its demand against the defendant, then it would seem that the public is not interested in the matter. There is nothing in the case which purports to show or to claim that the rights of creditors or depositors were involved or endangered by the loss of this asset of the plaintiff. Consequently, the basis for the exception in favor of the plaintiff is wanting. If, in any subsequent action, it shall appear that it is necessary for the protection of creditors or depositors to enforce this obligation, the opinion and judgment in this action will not be a bar to such relief.

The petition for a rehearing is denied.

Shaw, C. J., Lawlor, J., Wilbur, J., Richards, J., *pro tem.*, and Lennon, J., concurred.