THE COURT.
 

 Following a transfer of the above-entitled cause to this court after decision and judgment by the District Court of Appeal, First Appellate District, Division Two, this court is satisfied with the opinion rendered by that court and division, written by Mr. Associate Justice Spence, as follows, and adopts the same as and for the decision and opinion of this court:
 

 
 *592
 
 “Plaintiff, an importer, filed his complaint for declaratory relief. The defendants Lawrence and Tuttle were attorneys at law and defendant Pitt was a custom house broker. Defendants filed separate answers and in addition thereto the defendant attorneys filed a cross-complaint. The cause was tried by the court sitting without a jury and judgment was entered in favor of defendants and cross-complainants as follows: 'That the defendant attorneys have and recover against plaintiff the sum of $1,348.60;’ that the refunds due upon duties paid by plaintiff to the United States Government belonged to the defendant attorneys ‘to the extent of the said recovery against the said plaintiff’; and that one-third of the amount recovered by the defendant attorneys belonged to the defendant broker. Plaintiff appeals from said judgment.
 

 “The record on this appeal is not wholly satisfactory as the findings of fact, which are referred to in the briefs, are not included in the transcript. It is conceded by plaintiff, however, that the trial court made a finding that ‘all of the allegations of the answers of the defendants and of the cross-complainants are true’ and this admitted finding appears sufficient for the purposes of this discussion.
 

 “The complaint alleged a controversy between the parties concerning the compensation claimed by the defendant attorneys for services rendered in connection with the recovery of certain refunds upon duties paid to the government upon the importations by plaintiff of cotton rags. In their cross-complaint defendant attorneys alleged that in 1930 they were employed by plaintiff as attorneys to prepare and file the necessary protests, to appear for plaintiff before the United States Custom Court and the Treasury Department and to do all things necessary and advisable to obtain refunds from the government upon the duties paid upon said importations. They further alleged that defendant attorneys entered upon ■ their employment and rendered all necessary services and had ultimately obtained stipulations for the entry of judgments against the government for refunds to plaintiff in the sum of $2,697.20. It was then alleged that the reasonable value of said services was the sum of $1,348.60, which sum plaintiff had refused to pay upon demand. There was ample evidence to sustain the trial court’s findings that said allegations were true and therefore
 
 *593
 
 the portion of the judgment awarding said sum to the defendant attorneys finds ample support.
 

 “The parties however have devoted their briefs largely to the consideration of other points. It appeared from the evidence that the defendant broker had acted' as the custom house broker for plaintiff for many years; that when it became necessary to go into the United States Customs Court to attempt to recover their refunds, the defendant broker advised plaintiff that he could not handle the cases before said court and that it would be necessary to employ an attorney; that plaintiff authorized the defendant broker to do all things necessary for that purpose and said broker thereupon employed the defendant attorneys; that pursuant to a general understanding between said broker and said attorneys, all cases referred to said attorneys by said broker were to be handled by them on a 50 per cent contingent basis and the said broker was to receive 33 1/3 per cent of said 50 per cent; that plaintiff did not know who were employed as attorneys until several years later when the stipulations were finally obtained; that plaintiff had not theretofore been advised of the agreement between said broker and said attorneys regarding the fee to be charged the plaintiff or of the agreement for the broker’s participation therein. It further appeared from the evidence that a 50 per cent contingent fee was a reasonable and customary fee for handling of said cases but that in particular eases, a smaller fee was sometimes agreed upon.
 

 “ The main points raised by plaintiff are based upon the theory that under the pleadings and evidence, no recovery could be had against plaintiff except upon an express contract of employment and that the judgment must be reversed in its entirety as the express contract was invalid. These points are all related to plaintiff’s first main point, which is stated as follows: ‘The contract of employment between the attorneys and the client is not binding upon the client and cannot be made the basis of an action for attorneys’ fees on the part of the attorneys, because it is illegal, void, and contrary to public policy. ’ In support of his contentions, plaintiff cites and relies upon
 
 Auerbach
 
 v.
 
 Curie,
 
 119 App. Div. 175 [104 N. Y. Supp. 233]; Id., 126 App. Div. 836 [111 N. Y. Supp. 327];
 
 Reilly
 
 v.
 
 Beekman,
 
 24 Fed. (2d) 791;
 
 Alpers
 
 v.
 
 Hunt,
 
 86 Cal. 78 [24 Pac. 846, 21 Am. St. Rep. 17,
 
 *594
 
 9 L. R. A. 483]; 3 Cal. Jur. 689, sec. 89 and other authorities. We deem it unnecessary to discuss those points, for even assuming that the express contract was invalid because of the provision providing for payment of a portion of the fee to the broker, the attorneys were nevertheless entitled to recover upon a
 
 quantum meruit.
 
 (2 R. C. L. 1046.)
 

 “We now come to a consideration of plaintiff’s contentions with respect to the second and third portions of the judgment as entered. The second portion reads as follows: ‘ And it is hereby further ordered, adjudged and decreed that all refunds due from the United States Government of duties paid by the said plaintiff upon the importations mentioned in the said complaint belong to said Lawrence & Tuttle as copartners as aforesaid, and they are entitled to receive the same, to the extent of the said recovery against the said plaintiff hereinabove mentioned, and said refunds shall be applied by the said Lawrence & Tuttle upon the said recovery, as received by them, until this judgment has been satisfied. ’ The third portion reads as follows: ‘And it is hereby further ordered, adjudged and decreed that one-third of all said sums received' by said Lawrence & Tuttle shall, upon such receipt, belong to said George H. Pitt, who shall thereupon become entitled to receive the same.’
 

 “ Plaintiff contends that the trial court erred in including said second and third portions in the judgment herein and in our opinion this contention must be sustained. Even if there was a valid express contract for the payment to the attorneys of a contingent fee, it is conceded that such contract would not give rise to a lien upon or an interest in the judgment or the subject-matter of the litigation.
 
 (McGown
 
 v.
 
 Balzell,
 
 72 Cal. App. 197 [236 Pac. 941];
 
 Gage
 
 v.
 
 Atwater,
 
 136 Cal. 170 [68 Pac. 581];
 
 Hogan
 
 v.
 
 Black,
 
 66 Cal. 41 [4 Pac. 943];
 
 Mansfield
 
 v.
 
 Dorland,
 
 2 Cal. 507.) But defendants attempt to justify these portions of the judgment upon the ground that the express contract was valid and that plaintiff having sought equitable relief (declaratory judgment) the door was open for the court to do equity’. This position is untenable. The refunds belonged to plaintiff and the declarations in the judgment to the contrary were not proper even in this action for equitable relief. While a court of equity may exercise broad powers in applying
 
 *595
 
 equitable remedies, it may not create new substantive rights under the guise of doing equity.”
 

 The judgment is modified by striking therefrom the second and third portions thereof which are above set forth and as so modified, the judgment is affirmed. The parties will bear their own costs on this appeal.
 

 dissenting opinion.
 

 We dissent:
 

 From the record herein, it appears that plaintiff is an importer; that defendant Pitt is a customs broker; and that defendants Lawrence & Tuttle are attorneys who specialize in the business of representing clients who are claimants for rebates or refunds on tariff charges or duties which theretofore have' been paid by them to the United States government. In the conduct of his business, plaintiff imported a large quantity of cotton rags upon which he paid a considerable amount of duty or tariff. In that transaction defendant Pitt acted as plaintiff’s customs broker. As the result of some research, the idea was conceived that the cotton rags were not properly subject to as large an amount of duty as had' been paid, and thereupon defendant Pitt was authorized by plaintiff to do all things necessary, including the hiring of an attorney, to attempt to obtain a rebate or “refund” with respect to such payment. To that end, in plaintiff’s behalf defendant Pitt employed defendants Lawrence & Tuttle on a contingent fee basis; that is to say, as far as plaintiff was informed, that to whatever extent a rebate might be recovered, defendants Lawrence & Tuttle should become entitled to retain for their own use 50 per cent thereof for the performance of their services in that regard, and that plaintiff should be entitled to the remainder of such rebate. But without the knowledge or the consent of plaintiff, it was further agreed between defendant Pitt on the one side and defendants Lawrence & Tuttle on the other, that of the fee which might be thus received by the latter, defendant Pitt would be paid one-third; which arrangement had the effect of reducing the contingent fee which actuálly was proposed to be received by Lawrence
 
 &
 
 Tuttle from 50 per cent to 33 1/3 per cent. During the pendency of the proceedings in the matter of attempting to recover such rebate, in a similar proceeding that had been instituted by
 
 *596
 
 a third person, in which neither plaintiff nor his attorneys herein, was or were respectively in any wise connected, a final ruling was made to the effect that cotton rags were not dutiable, with the result that, by subsequent stipulation of the interested parties, plaintiff herein became entitled to, and was awarded, a refund of the entire amount, of money which theretofore he had paid as a duty or tariff upon the importation of said cotton rags.
 

 Upon the application of an elementary rule of agency, it becomes clear that by reason of the undisputed fact that at all times throughout the transaction defendant Pitt was acting as the agent of plaintiff, and that in the course of such agency, without the knowledge or the consent of plaintiff, he entered into an agreement with Lawrence & Tuttle to the effect that the amount of the fee which Lawrence & Tuttle might earn or become entitled to receive, would be divided or “split” between Lawrence & Tuttle on the one side, and Pitt on the other, was in fraud of plaintiff, was violative of the duty which Pitt owed to plaintiff, and was contrary to public policy. As a consequence of that situation, Pitt cannot be permitted to receive any part of such contemplated fee.
 

 In the lower court the defendants Lawrence & Tuttle made no claim against plaintiff on the basis of the fact that theretofore they had rendered services to him in accordance with the provisions of a contingent fee contract that theretofore had been entered into between the respective parties thereto, but instead thereof, the defendants Lawrence & Tuttle relied upon the fact alleged both in their answer and in their cross-complaint to the effect that they had been employed by plaintiff and that they had performed certain services for him of the reasonable value of a specified sum of money, equal to 50 per cent of the amount of the refund, and that plaintiff had neglected and refused to pay them for such services. And that was the basis on which judgment was rendered by the lower court in favor of the said defendants.
 

 In accordance with the facts, if for the reasons hereinbefore indicated, it may be assumed that the contingent fee contract was void and that it was not relied upon by the defendants Lawrence & Tuttle as affording a legal foundation for the recovery of a judgment against plaintiff, the determinative question herein relates to whether, the entire situation eon
 
 *597
 
 sidered, the defendants Lawrence & Tuttle are entitled to be compensated for the performance of services by them for plaintiff on the basis of the reasonable value thereof.
 

 In 2 R. C. L. 1046, and in 5 Am. Jur., page 367, the various rules that relate to the rights of the respective parties, especially in connection with an asserted right to be compensated for the reasonable value of services that have been performed in pursuance of an illegal contract, are succinctly set forth. And in connection with circumstances that are analogous to those herein presented, the authorities therein cited appear to be to the effect that although a contract that has been entered into between an attorney and his client for the performance of services by the former for the latter may be void because of lack of power in one or both of the parties thereto to make it, or because of some irregularity in its execution, or the like, nevertheless if the contract
 
 does not violate public policy,
 
 “and is not in any way tainted with immorality or illegality, . . . , the attorney may recover upon a
 
 quantum meruit
 
 for the reasonable value” of the services that have been performed by him. (5 Am. Jur., p. 367.)
 

 In the light of that principle, and in order that the instant agreement may be tested thereby, it may be advisable that the subject-matter as well as some of the elements of the contract be given consideration. Intrinsically, it involved the proposed recovery of money which it was claimed theretofore had been wrongfully exacted from and paid by plaintiff. In that regard, as embracing a matter of legal right, no fair-minded person could property complain. On its face, in substance, the contract was that one of its parties should perform certain services, for which in effect, contingent upon the collection of any amount of money as rebate, the other agreed to pay a specified percentage of any money that might be thus collected. Nor in accord with well-established rules of law in this jurisdiction, did the fact that the stipulated compensation which was to be paid to the attorneys for services proposed to be rendered by them in their efforts to recover such money depended upon the fact of successful outcome of the matter, or upon the measure of such success, offend our standard of accepted good morals. As a matter of law, it therefore is inconceivable that either the subject-matter of the contract or the consideration to
 
 *598
 
 be performed or rendered by either of its parties, respectively, could have been successfully questioned from the standpoint of whether it was in violation of the moral code or so-called public policy. However, the money consideration that was intended to be paid by plaintiff was just as great an element in the fundamentals of the contract as was the matter of specified services that were proposed to be rendered by the defendants. Each was the
 
 “quid pro quo”
 
 of the other; and by the respective parties, each of such considerations was assumed to be the equal of the other. Assumedly, and for aught that appears, any diminution in pecuniary consideration that was to be rendered by plaintiff would have been subject to objection by the defendants, just as plaintiff would have been justified in complaining had the defendants failed in their duty to render to plaintiff honest, efficient and faithful service. Dependent entirely upon such success, if any, as might be attained, plaintiff was obligated to pay a fixed percentage of compensation;—no more, no less. Plaintiff was financially interested in obtaining the services of the defendants for the least possible percentage of the rebate or the refund that might be recovered. Outwardly, and avowedly, as between plaintiff and the defendants Lawrence & Tuttle, assumedly that percentage was fixed at 50 per cent; —when as a matter of fact, in accordance with ‘ arrangements” that had been made between the said defendants and plaintiff's trusted agent, the said defendants were willing and agreed to perform their services for 33 1/3 per cent. In other words, from a legal standpoint, defendants Lawrence & Tuttle induced plaintiff’s agent to represent to plaintiff that he would be obligated to pay to the said defendants 50 per cent of any amount that might be recovered; when in truth all that the said defendants demanded, and all that was to be paid to them individually was 33 1/3 per cent of such amount. In contemplation of the law, the proposed conduct of plaintiff’s agent, in which he was knowingly aided and abetted by the said defendants was nothing less than legal fraud; and in its contemplated consummation one of such parties was equally guilty with the other. Otherwise stated, as far as plaintiff was concerned, in the element of consideration of the contract, in effect it was proposed by the said defendants that plaintiff be deceived and cheated out of a considerable sum of money, and that the said defendants
 
 *599
 
 would collaborate with plaintiff’s agent in bringing about that untoward result. Furthermore, although the said defendants were not attorneys authorized to practice their profession as such within the courts of the state of California, nevertheless they assumed to act in that capacity inasmuch as they were duly admitted to practice and actually were practicing as customs attorneys. As such, in representing clients, and especially plaintiff herein, a fiduciary relationship was created and existent, which required the said defendants at all times to exercise the highest good faith toward plaintiff. That by concealment of material facts from plaintiff, thereby deceiving him with regard to the fee which he would be required to pay, and particularly in withholding from him the details of the “arrangement” that- had been entered into between them and Pitt, the said defendants disregarded and violated the duty which in good morals they owed to plaintiff in the premises.
 

 In the case of
 
 Alpers
 
 v.
 
 Hunt,
 
 86 Cal. 78 [24 Pac. 846, 21 Am. St. Rep. 17, 9 L. R. A. 493], wherein was involved a situation similar to that which herein appears, the question of the duty which an attorney owes to his client, particularly with reference to the impropriety of “splitting” a fee with a layman, was given thorough and painstaking consideration. As far as the point here at issue is concerned, the syllabus to the case correctly indicates the ruling that was therein made as follows: “A contract between a third person not an attorney and an attorney and counsellor at law, that he will procure the attorney’s employment by a litigant, and that in consideration of such procurement he is to have from the attorney so employed one-third part of whatever remuneration the latter receives for his services from the litigant, is contrary to public policy and invalid.”
 

 Likewise in the case of
 
 Reilly
 
 v.
 
 Beekman,
 
 24 Fed. (2d) 791, which also closely resembled the instant case in its principal facts, and wherein the various pertinent authorities were given consideration, it was held that a contract such as that which was entered into between the parties to the instant matter was “against public policy”.
 

 And in the case of
 
 Auerbach
 
 v.
 
 Curie,
 
 119 App. Div. 175 [104 N. Y. Supp. 233], in which the foundational facts were strikingly similar to those here presented, the conclusion was the same. In substance, that was a customs ease in
 
 *600
 
 which a broker instituted an action against an attorney to recover a judgment for the broker’s asserted share of a fee that had been paid to the attorney for recovering a refund of duty that had been paid by the broker’s principal. In ruling on the question here under consideration, in part it was there said: The plaintiff was the agent of Simon Auerbach & Co., and it was a part of his obligation toward his principals to prevent, if he could, the payment by them of excess duties on their imports. If he assumed to employ an attorney for them, or to procure a contract from them for such employment, to recover the duties improperly paid, he could not in fairness to Simon Auerbach & Co. and in good morals,
 
 without their knowledge and consent,
 
 act as agent for the attorney also in procuring a contract from them to him, and make an agreement with the attorney, who knew he was so acting, for the payment to himself of a part of the fee to be charged. It was his duty to obtain the services of such attorney at as reasonable a price as he might be able, without any profit to himself.
 
 Any secret agreement
 
 which he might make for the sharing of the attorney’s fee was, not only a breach of trust against his principals, but against good morals and public policy, and a contract which the law will not enforce. . . . ‘ The contract itself is void as against public policy and good morals, and both parties thereto being
 
 in pcuri delicto,
 
 the law will leave them as it finds them’.” To the same legal effect, see:
 
 Wolfe et al.
 
 v.
 
 International Reinsurance Corp.,
 
 73 Fed. (2d) 267;
 
 Deakin
 
 v.
 
 Scheuer,
 
 182 Wis. 234 [196 N. W. 222];
 
 Rice
 
 v.
 
 Wood,
 
 113 Mass. 133 [18 Am. Rep. 459];
 
 Rabinowitz et al.
 
 v.
 
 Pizer,
 
 108 N. Y. Supp. 994;
 
 Nekarda
 
 v.
 
 Presberger,
 
 123 App. Div. 418 [107 N. Y. Supp. 897];
 
 Bollman
 
 v.
 
 Loomis,
 
 41 Conn. 581;
 
 Lynch
 
 v.
 
 Fallon,
 
 11 R. I. 311 [23 Am. Rep. 458];
 
 Gray
 
 v.
 
 Pankey,
 
 211 Ala. 539 [100 So. 880];
 
 Everhart
 
 v.
 
 Searle,
 
 71 Pa. 256;
 
 Rice
 
 v.
 
 Davis,
 
 136 Pa. 439 [20 Atl. 513, 20 Am. St. Rep. 931];
 
 Raisin
 
 v.
 
 Clark,
 
 41 Md. 158 [20 Am. Rep. 66].
 

 From the foregoing considerations, it must result as in effect is negatively or by implication expressed in 2 R. C. L., page 1046, and 5 Am. Jur., page 367, to which reference hereinbefore has been had, that even though in itself, the principal subject-matter of the instant contract was legally unobjectionable, since it also has been made to appear that in
 
 *601
 
 at least one of its fundamentals it was violative of public policy, the entire contract became tainted and contaminated; —from which situation its illegality inevitably should be decreed.
 

 The illegality of the instant contract being thus established, the question of the right of defendants Lawrence & Tuttle to recover from plaintiff as for the reasonable value of the services that were rendered by the said defendants to plaintiff, remains for consideration.
 

 At the outset, it should be noted in this regard that the authorities are not entirely harmonious one with the other or the others. Reverting to the text in 2 R. C. L. 1046, it may be noted that after directing attention to “an obvious distinction bearing upon the right of an attorney to recover on a
 
 quantum meruit
 
 for services rendered pursuant to an illegal contract, between a case where the contract is illegal because the services agreed to be rendered in the performance thereof are illegal, and a case where the contract is illegal only because of some improper provision relating to the mode of compensation, or an illegal stipulation against the right of the client to compromise the claim without the consent of the attorney”;—the author of the commentary continues as follows: “It is apparent, in the first case, that every objection to permitting a recovery upon an express contract applies with equal force to a recovery upon a
 
 quantum meruit.
 
 And this is true even when the services are not intrinsically illegal, but are improper and contrary to public policy because of the circumstances under which they are rendered. ’ ’
 

 The same principle, with appropriate comments thereon may be noticed in the case of
 
 Roller
 
 v.
 
 Murray,
 
 112 Va. 780 [72 S. E. 665, Ann. Cas. 1913B, 1088, 38 L. R. A. (N. S.) 1202], wherein it was held that a contract whereby an attorney agreed to undertake and carry on litigation at his own risk and without cost to his client for a share of the recovery was contrary to public policy and void and that no recovery could be had “on a
 
 quantum meruit”
 
 because the law will not aid either party to an illegal agreement. It leaves the parties where it finds them. In rendering its decision therein, in part, the court said: “The general rule is that where an agreement is treated as void merely because it is not enforceable, as in cases under the statute of frauds or of parol agreements where the contract is not in writing
 
 *602
 
 and money is paid or services are rendered under it by one party and the other avoids it, there can be a recovery upon an implied
 
 assumpsit
 
 for the money paid or the value of the services rendered. In such cases there has been the mere omission of a legal formality, and while by the terms of the statute he must lose the benefit of his contract, yet, there being nothing illegal or immoral in it, he is entitled to be compensated for the services rendered under it.” The following pertinent language also appears in the opinion: “A champ ertous agreement being unlawful, it would seem clear that compensation for services rendered under it could not be recovered upon a
 
 quantum meruit,
 
 any more than upon the agreement itself, without overturning the very foundations upon which the rule refusing to enforce unlawful agreements is based. Of what value would the rule be, if the courts permit that to be done by indirection which they refuse to allow to be done directly
 
 1
 
 Why say to the attorney, ‘You shall not recover upon the champ ertous agreement the agreed value of the services rendered by you,, but you may recover upon an implied contract (which in fact never existed) the value of such services’, which in this case is claimed and shown to be the same as the agreement provided for? How would any such result uphold the policy of the law, deter others from entering into similar contracts, or promote the public good? To permit a recovery upon a
 
 quantum meruit,
 
 instead of discouraging, would encourage, the making of such contracts; for, if the client kept and performed his unlawful agreement, the attorney would get the benefit of it, and, if he did not, the attorney would suffer no loss, since he could recover on the
 
 quantum meruit
 
 all that his services were worth. Any process of reasoning which leads to such a result we think must be unsound. ’ ’
 

 To the same effect, see
 
 Reilly
 
 v.
 
 Beekman, supra; Mazureau
 
 v.
 
 Morgan,
 
 25 La. Ann. 281,
 
 Butler
 
 v.
 
 Legro,
 
 62 N. H. 350 [13 Am. St. Rep,. 573],
 
 Bowman
 
 v.
 
 Phillips,
 
 41 Kan. 364 [21 Pac. 230, 13 Am. St. Rep. 292, 3 L. R. A. 631],
 
 Moreland
 
 v.
 
 Devenney,
 
 72 Kan. 471 [83 Pac. 1097], and
 
 Barngrover
 
 v.
 
 Pettigrew,
 
 128 Iowa, 533 [104 N. W. 904, 111 Am. St. Rep. 206, 2 L. R. A. (N. S.) 260] ; also, analogously, authorities cited in 85 A. L. R. 1368 et seq.
 

 And in principle, the rulings by the appellate tribunals of this state are in accord:
 
 Bank of Orland
 
 v.
 
 Harlan,
 
 188 Cal.
 
 *603
 
 413, 421 [206 Pac. 75],
 
 Maryland Casualty Co.
 
 v.
 
 Fidelity etc. Co.,
 
 71 Cal App. 492 [236 Pac. 210], and
 
 Pacific Elec. Ry. Co.
 
 v.
 
 Bonding etc. Ins. Co.,
 
 55 Cal. App. 704, 707 [204 Pac. 262].
 

 It follows that the judgment should be reversed.
 

 Houser, J., Seawell, J., and Curtis, J., dissented.