UNITED STATES of America ex rel.
Alnoor VIRANI, Plaintiff–
Appellee,

v.

JERRY M. LEWIS TRUCK PARTS &
EQUIPMENT, INC.;  Steven Lewis;
Robert Holtzman, Defendants,

and

Hall & Phillips, Appellants.

UNITED STATES of America ex rel.
Alnoor VIRANI, Plaintiff–
Appellee,

v.

Steven H. LEWIS;  Jerry M. Lewis Truck
Parts & Equipment, Inc.;  Robert Holtz-
man, Defendants–Appellants.

Nos. 95–56396, 95–56456.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 3, 1996.

Decided July 10, 1996.

Marc Marmaro, Jeffer, Mangels, Butler & Marmaro, Los Angeles, California, for real party-in-interest Hall & Phillips.

Phillip R. Benson, Newport Beach, California, for plaintiff-appellee.

Fred D. Heather, Troop, Meisinger, Steuber & Pasich, LLP, Los Angeles, California, and Susan B. Myers, McKenna & Cuneo, LLP, Los Angeles, California, for defendants Jerry M. Lewis Truck Parts & Equipment, Inc., and Steven H. Lewis.

Before: FARRIS, FERNANDEZ, and THOMAS, Circuit Judges.

FERNANDEZ, Circuit Judge:

The law firm of Hall & Phillips (HP) appeals the district court's order which required Jerry M. Lewis Truck Parts & Equipment, Inc. (Lewis), the defendant in a *qui tam* suit, to pay statutory attorneys' fees to Alnoor Virani, the *qui tam* relator, rather than directly to HP. The law firm was Virani's attorney in the *qui tam* action. At the same time, Lewis appeals the district court's refusal to reconsider the amount of the attorneys' fees award because Lewis contends that improper fee arrangements made the attorneys' fees unreasonable. We reverse the district court's order that the attorneys' fees be paid directly to the *qui tam* relator rather than directly to the attorneys, but we affirm the district court's denial of Lewis's motion for reconsideration.

## STATEMENT OF THE CASE

In February 1989, Virani retained HP to represent him in a *qui tam* action against Lewis under the False Claims Act (FCA). 31 U.S.C. §§ 3729–3732. The retainer agreement provided that Virani would not pay HP for legal services in connection with the Lewis litigation. The agreement, however, did reserve HP's right to seek court-awarded costs, expenses, and attorneys' fees from Lewis. The agreement further assigned to HP all monetary amounts awarded as costs, expenses or attorneys' fees and provided that HP would have the "ultimate authority concerning the conduct of this litigation, including decisions such as whether to

continue to prosecute the case and the terms of any settlement."

On the same day, Virani also entered into an agreement with the Taxpayers Against Fraud (TAF). That agreement bound the parties to act as co-plaintiffs in the Lewis case. TAF agreed to pay the litigation expenses while Virani promised that TAF would receive 40% of any recovery awarded by the court. The agreement further provided that any percentage of the recovery that TAF adjudged to be necessary to pay to counsel would come exclusively out of TAF's share. Some months earlier, in September 1988, TAF had entered into an agreement with HP whereby TAF agreed to pay HP two-thirds of its hourly rate in addition to half of any damages received by TAF in FCA cases. HP had agreed to represent TAF in several FCA cases already in progress and in future FCA cases. Virani claims to have had no knowledge of the agreement between TAF and HP.

In December of 1990, TAF withdrew from this litigation, but before it withdrew it entered into a second agreement with Virani which reaffirmed Virani's obligation to pay 40% of any award to it. In May 1992, TAF entered into a second agreement with HP which superceded the September 1988 agreement. TAF agreed to pay at least a 50% contingency fee in each of TAF's FCA cases. However, the parties also agreed that specific arrangements could be made for any particular lawsuit, and TAF agreed to pay a two-thirds contingency fee in the Lewis litigation.

Virani and Lewis settled the underlying *qui tam* action, and the court awarded $316,500 in statutory attorneys' fees. During the attorneys' fee litigation, Lewis discovered the arrangements between Virani, HP, and TAF. Lewis asserted that because the fee arrangements were "fraudulent and unconscionable," the statutory attorneys' fee should be lowered. The district court, however, adopted the Report and Recommendation of the Magistrate Judge and rejected Lewis's argument.

After the court awarded the statutory fees, Virani claimed that he was entitled to personally receive the fees because he was unaware of the arrangement between HP and

TAF. The district court agreed. It concluded that Virani was entitled to collect the fees himself and determined that it had not retained jurisdiction to determine how the fee ought to be allocated under the fee agreements between HP and Virani. In effect, it allowed Virani to keep the fees, unless HP could successfully obtain them from him in another action.

## JURISDICTION AND STANDARDS OF REVIEW

The district court had jurisdiction pursuant to 28 U.S.C. § 1331 and 31 U.S.C. § 3732(a). We have jurisdiction pursuant to 28 U.S.C. § 1291.

"We generally review fee awards for an abuse of discretion." *Haworth v. Nevada,* 56 F.3d 1048, 1051 (9th Cir.1995); *Franklin Fin. v. Resolution Trust Corp.,* 53 F.3d 268, 273 (9th Cir.1995). However, we review the supporting findings of fact for clear error, but review whether the district court applied the correct legal standard de novo. *Price v. Seydel,* 961 F.2d 1470, 1475 (9th Cir.1992); *see also Parents of Student W v. Puyallup School Dist., No. 3,* 31 F.3d 1489, 1498 (9th Cir.1994). Also, we review any element of statutory interpretation involved in the district court's decision de novo. *See Haworth,* 56 F.3d at 1051. We review a district court's determination that it lacks subject matter jurisdiction de novo. *See Seven Resorts, Inc. v. Cantlen,* 57 F.3d 771, 772 (9th Cir.1995); *Sopcak v. Northern Mountain Helicopter Serv.,* 52 F.3d 817, 818 (9th Cir.1995).

## DISCUSSION

### A. *Entitlement to Receipt of Fees.*

The relationships between Virani, HP, and TAF have generated an issue that courts are rarely required to focus upon. As do many other statutes, the False Claims Act provides for an award of fees to successful plaintiffs. It states, in pertinent part: "Any such person shall also receive an amount of reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs." 31 U.S.C.

§ 3730(d)(1). On its face this seems to say that the plaintiff can recover the attorneys' fee for himself. What then of the attorney? Are not the fees for his services and should not he, if anyone, receive them? It is usually assumed that the answer to the latter question is "Yes, of course, how could it be otherwise." That assumption simply tends to be in the background of decision making about fees. "Yet there are times when someone will ask that a usually unacknowledged part of the background be brought to the forefront and perused before it recedes again into relative obscurity." *Larson v. Neimi,* 9 F.3d 1397, 1402 (9th Cir.1993). This is one of those cases.

■ What makes the issue most interesting is that at first blush it appears to present us with a conundrum: if the attorney is entitled to the fee, how can it be that he has no right to ask for it, and if the client has the right to ask for it, how can it be that he has no right to keep it? The answer was suggested by Hohfeld, for as he said, "the term 'rights' tends to be used indiscriminately to cover what in a given case may be a privilege, a power, or an immunity, rather than a right in the strictest sense; and this looseness of language is occasionally recognized by the authorities." Wesley Newcomb Hohfeld, *Some Fundamental Legal Conceptions as Applied in Judicial Reasoning,* 23 Yale L.J. 16, 30 (1913). So it is here. The client's right is really a power to obtain fees for his attorney; the attorneys' right does not come into being until the client exercises that power; the defendant's liability will only arise if that power is exercised. But we are a little ahead of ourselves and will now outline the authorities which appear to create the conundrum in the first place.

■ The Supreme Court has made it clear that, in general, statutes bestow fees upon parties, not upon attorneys. *Evans v. Jeff D.,* 475 U.S. 717, 731–33, 106 S.Ct. 1531, 1539–40, 89 L.Ed.2d 747 (1986). Those fees can, therefore, be waived by the party himself. *Id.* As the Court has said, "just as we have recognized that it is the party's entitlement to receive the fees in the appropriate case, so have we recognized that as far as [42 U.S.C. § 1988] is concerned, it is the party's

right to waive, settle, or negotiate that eligibility." *Venegas v. Mitchell,* 495 U.S. 82, 88, 110 S.Ct. 1679, 1683, 109 L.Ed.2d 74 (1990). Thus, the attorney remains at the mercy of the client, who can either demand attorneys' fees from the defendant, or not, as he chooses. If the client chooses not to ask for the fees, the attorney has no standing to request them. *See Willard v. City of Los Angeles,* 803 F.2d 526, 527 (9th Cir.1986); *see also Freeman v. B & B Assocs.,* 790 F.2d 145, 149 (D.C.Cir.1986). Of course, the attorney cannot then look to the defendant for payment.

■ On the other hand, weighty authority demonstrates that the client himself is not entitled to keep the fees which are measured by and paid on account of the attorneys' services. The plaintiff cannot collect fees at all unless there is a true attorney-client relationship. That is even true when the plaintiff *is* an attorney. *Kay v. Ehrler,* 499 U.S. 432, 435–437, 111 S.Ct. 1435, 1437, 113 L.Ed.2d 486 (1991). The mere fact that the attorneys' labor, even reasonable and skilled labor, is expended on the cause does not entitle the plaintiff-attorney to a fee. *Id.* at 437–38, 111 S.Ct. at 1438. The plaintiff has no power to confer the fee upon himself.

■ On the other side of the coin is the litigating organization, which, in a sense, may represent itself by the use of in-house counsel. It is separate from its attorneys, and it does have the power to obtain attorneys' fees for their services. *Id.* at 436 n. 7, 111 S.Ct. at 1437 n. 7. And when an individual is represented by a litigating organization, we have declared that "the award should be made directly to the organization providing the services to ensure against a windfall to the litigant." *Brandenburger v. Thompson,* 494 F.2d 885, 889 (9th Cir.1974). Litigating organizations are, in that sense, the providers of the legal services. *See id.* They "stand[ ] in the same position as a private attorney to whom a fee is owed." *Hairston v. R & R Apartments,* 510 F.2d 1090, 1093 (7th Cir.1975). Thus, "fee awards must accrue to counsel." *Rodriguez v. Taylor,* 569 F.2d 1231, 1245 (3d Cir.1977), *cert. denied,* 436 U.S. 913, 98 S.Ct. 2254, 56 L.Ed.2d 414 (1978). And "the grant of fees should go

directly to the organization providing the services." *Hairston,* 510 F.2d at 1093. *Cf. Serrano v. Priest,* 20 Cal.3d 25, 47 n. 21, 569 P.2d 1303, 1315 n. 21, 141 Cal.Rptr. 315, 327 n. 21 (1977) (award of fees directly to attorneys "no longer questioned in federal courts").

▮▮▮ All of this means that even if an attorney is willing to agree to work on a case for less than a reasonable fee, he will be entitled to a reasonable fee when the client asks that the fee be awarded out of the defendant's pocket. *See Quesada v. Thomason,* 850 F.2d 537, 543 (9th Cir.1988). That creates no windfall for the attorney because he will merely receive "a reasonable hourly fee for all hours reasonably spent." *Id.* And it creates no windfall for clients because "statutory awards in excess of private fee agreements ... should be used to compensate the attorney in full." *Id.; see also Phillips v. General Servs. Admin.,* 924 F.2d 1577, 1582–83 (Fed.Cir.1991) (to be incurred there must be agreement that the fee will be paid over to attorney).

These concepts were tested in a truth-in-lending case where the statute provided that a creditor who did not make proper disclosure was liable to the wronged person in an amount equal to, among other sums, " 'a reasonable attorney's fee....' " *Plant v. Blazer Fin. Servs., Inc.,* 598 F.2d 1357, 1365 (5th Cir.1979). The losing creditor claimed a right to set off the amount that it was owed by the plaintiff against the attorneys' fee that was awarded to the plaintiff. The court did not agree. It was not moved by the argument that the fee was "nominally" awarded to the plaintiff. As it held, "the fee once awarded becomes in effect an asset of the attorney, not the client." *Id.* at 1366; *see also Freeman,* 790 F.2d at 150. In other words, the fee is for the attorney and the attorney should receive it.

▮▮▮ In the *qui tam* arena, it is even more clear that attorneys' fees must go to the attorneys rather than to the plaintiff. If they did not, a wrong would be perpetrated upon the government. *See United States ex rel. Gibeault v. Texas Instruments Corp.,* 25 F.3d 725 (9th Cir.1994). If the amount went to the plaintiff, it would be a compensatory payment which really belongs to the United States subject to allocation of a portion to the plaintiff. *Id.* at 728. As we have said:

> [T]he government claims the $300,000 payment for attorneys' fees is really a settlement under the False Claims Act that is structured as attorneys' fees. Such an allocation of the settlement proceeds would contravene the requirements of § 3730(d)(2), which guarantees the government a substantial portion of any False Claims Act settlement.
>
> ....
>
> ... Thus, the government has a genuine concern as to whether the amount labelled attorneys' fees actually represents in part a payment to the *qui tam* plaintiff.

*Id.*

With the above, the statement of the riddle is complete. How can it be that the one who may be entitled to actually receive any fee has no right to ask for it, but the one who has the right to ask for the fee is not entitled to actually receive it? Again, the answer is found in the characterization of the plaintiff's right as a power. "To have a power is to have the ability to make another person have or cease to have rights of one kind or another." Judith Jarvis Thomson, *The Realm of Rights* 59 (1990); *see also* Hohfeld, 23 Yale L.J. at 44–49. We are all familiar with powers of appointment where the holder can direct that assets be paid from "A" (usually a trust fund) to "B." Until that power is exercised, "B" has no right to the assets, and "A" has no duty to give them to him.

Similarly, in this area only the plaintiff has the power to demand that the defendant pay the fees of the plaintiff's attorney.[1] Unless and until the plaintiff exercises that power, no one has the right to collect fees from the defendant, and the defendant has no duty to pay them. Once the power is exercised, however, the attorneys' right vests, and the defendant's duty becomes fixed. *Compare Phillips,* 924 F.2d at 1583 (no fee is "in-

---

1. Of course, we recognize that it is not quite that simple. The court must make the order, and the defendant can contest it. Yet, the principle remains the same.

curred" for fee award purposes unless there is an express or implied agreement that they will be paid to the attorney). The work was done by and the fees are for the plaintiff's attorney. They must be directed to the attorney. Were the rule otherwise, plaintiffs would obtain possession of fee awards, and attorneys would be left to attempt to obtain the money paid for their services as best they could. Left to the normal vicissitudes of life, substantial sums would be diverted from their intended purpose. Actions of the client or of the client's creditors (or heirs) would often intervene. That would not only thwart the Congressional purpose but would also make no sense at all and would lead to unconscionable results.

This case is determined by a straightforward application of these principles. Virani paid no fees to HP, but he did exercise his power to request that fees be paid in an amount calculated on the value of HP's labor. The district court awarded those fees, and HP acquired the right to receive them from Lewis. The district court erred when it decided that the fees must be paid to Virani himself and left it up to HP to see if it could recover the fees from him. Under no condition was Virani entitled to receive direct payment of those fees from Lewis. If HP did not earn them, Lewis should not have to pay them at all; if HP did earn them, Lewis must pay them to HP.[2] That brings us to Lewis's claims.

## B. *Reasonableness of Fees.*

Lewis asserts that HP did not treat Virani ethically, so the fees it was ordered to pay cannot have been reasonable. The district court did not address the issue. It failed to do so because it was of the opinion that fee disputes were entirely between the attorney and the client and had nothing at all to do with the defendant. That determination was the almost inevitable result of the district court's decision that the plaintiff can personally receive the fee and can then attempt to keep it for himself. In that the district court erred because the statute only requires Lewis to pay a reasonable attorneys' fee, and the

question here must be: What *is* a reasonable attorneys' fee?

Lewis contends that California law provides that the attorney cannot recover anything at all if an ethical violation is shown. It is possible that some aspects of the fee arrangements between Virani and HP were not entirely proper. *See United States ex rel. Taxpayers Against Fraud v. General Elec. Co.,* 41 F.3d 1032, 1043–49 (6th Cir. 1994). We express no opinion on that head. However, under the facts of this case Lewis's assertions are not supported by California law. Thus, the district court reached the correct result when it refused to revisit its determination that the fee awarded for services rendered in the *qui tam* action was reasonable.

■ California courts have often held that when the ethical violation in question is a conflict of interest between the attorney and the client (or between the attorney and a former client), the appropriate fee for the attorney is zero. At least that is true when the violation is one that pervades the whole relationship. *See, e.g., Clark v. Millsap,* 197 Cal. 765, 785, 242 P. 918, 926 (1926) (relationship permeated with fraud after gaining control of client's assets; no attorneys' fee proper); *Day v. Rosenthal,* 170 Cal.App.3d 1125, 1162, 217 Cal.Rptr. 89, 113 (1985) (no finding on reasonable value of attorneys' services necessary because conflict of interest rendered services valueless), *cert. denied,* 475 U.S. 1048, 106 S.Ct. 1267, 89 L.Ed.2d 576 (1986); *Jeffry v. Pounds,* 67 Cal.App.3d 6, 12, 136 Cal.Rptr. 373, 377 (1977) (law firm entitled to compensation only for services it rendered prior to its breach of professional conduct by accepting representation of client's wife in marital dispute without the client's consent); *Goldstein v. Lees,* 46 Cal.App.3d 614, 617–18, 120 Cal.Rptr. 253, 254–55 (1975) (attorney who undertook to represent a client in a proxy fight with a corporation for which the attorney had been general counsel could not recover any fees); *Conservatorship of Chilton,* 8 Cal.App.3d 34, 43, 86 Cal.Rptr. 860, 866 (1970) (in case of a clear conflict of interest, there was no error when the trial court found no value in the services ren-

---

2. We do not opine on any other disputes which Virani might have with HP or TAF.

dered); *see also Asbestos Claims Facility v. Berry & Berry*, 219 Cal.App.3d 9, 26–27, 267 Cal.Rptr. 896, 906–07 (1990) (one of the methods by which the issue of attorney's conflict of interest may be raised is as a defense in the attorney's action to recover fees).

However, there is no hint in this case that there was any conflict of interest whatever. Nor was there any suggestion that HP did not perform valuable services for Virani or that anything is amiss in the calculation of the reasonable amount of fees for those services. The objection made here is that in the formation of the attorney-client relationship HP arranged matters in a way which could ultimately bring it more than a reasonable fee. It is also argued that Virani did not know that. We do not explore those issues because they come to no more than an assertion that HP handled its fee arrangement in a way that might have the taint of some impropriety. When that kind of claim has been made, California courts have not denied fees in their entirety. They have simply refused to enforce the improper agreement itself. Nevertheless, attorneys were still allowed to recover the reasonable value of their services. *See, e.g., Calvert v. Stoner*, 33 Cal.2d 97, 105, 199 P.2d 297, 301 (1948) (*quantum meruit* allowed even if fee arrangement were void as violative of public policy); *Rosenberg v. Lawrence*, 10 Cal.2d 590, 594, 75 P.2d 1082, 1084 (assuming the express contract for fees was void because of attorney misconduct in splitting the fee with a non-attorney *quantum meruit* allowed); *cf. Fracasse v. Brent*, 6 Cal.3d 784, 791, 494 P.2d 9, 13, 100 Cal.Rptr. 385, 389 (1972) (attorney entitled to payment for reasonable value of services rendered before his discharge by client, despite written fee contract); *Ayres v. Lipschutz*, 68 Cal.App. 134, 138, 228 P. 720, 720–21 (1924) (same).

■ In light of California law, even if there were some impropriety in the fee arrangement between HP and Virani, Lewis cannot prevail. HP would still be entitled to recover the reasonable value of its services, and that is all Lewis has been required to pay. We appreciate Lewis's concern that Virani be treated fairly when attorneys enter

into fee arrangements with him, but, again, that does not affect the amount of the fee which it must pay.

## CONCLUSION

■ HP rendered valuable services in a *qui tam* action against Lewis, and the court awarded a reasonable attorneys' fee for those services. After Virani exercised his power to have the fee assessed against Lewis, he decided that he would like to receive the fee himself. He cannot; the fee must go to HP. Lewis would like to ward off its duty to pay the fee by taking advantage of the falling out between Virani and HP. It cannot; the fee must go to HP. In fine, Virani's exercise of his power has created a right in HP to receive the fee and a corresponding duty in Lewis to pay it.

REVERSED and REMANDED, with directions to enter judgment directing payment of the fee to HP (No. 95–56396). AFFIRMED (No. 95–56456).

THOMAS, Circuit Judge, concurring.

I concur with the result in this case, but differ slightly from the majority's statutory interpretation. The majority holds that the False Claims Act requires payment of court-awarded attorneys' fees directly to the attorney. I would hold that, absent a contractual assignment to the attorney, the False Claims Act requires payment of the attorneys' fee award to the party, with the ultimate disposition of the award dependent upon the contract between the attorney and client. Here, I have absolutely no conflict with the result because Virani assigned his right to court-awarded attorneys' fees to his lawyers.

However, a brief comment on the statutory analysis is warranted. On its face, the False Claims Act provides that payment of attorneys' fees should be made directly to the qui tam plaintiff. Referring to the qui tam plaintiff, 31 U.S.C. § 3730(d)(1) provides:

Any such *person* shall also *receive* an amount for reasonable expenses which the court finds to have been necessarily in-

curred, plus reasonable attorneys' fees and costs.

(emphasis added).

This result is consistent with the general proposition, noted by the majority, that federal fee-shifting statutes confer fee awards upon parties, not attorneys. *Evans v. Jeff D.*, 475 U.S. 717, 730–32, 106 S.Ct. 1531, 1539–40, 89 L.Ed.2d 747 (1986). A party may waive statutorily authorized fees over the objection of his or her attorney. *Id.* Indeed, an attorney does not have standing to request statutory fees. *Willard v. City of Los Angeles*, 803 F.2d 526, 527 (9th Cir.1986).

The majority interprets this to mean that a client has a discretionary power to obtain a fee award. In the case of fee-shifting statutes, the majority concludes that if that power is exercised, the fee award must be paid directly to the attorney. The implication seems to be that the attorney has a vested right in the fee award and the client acts only as a vehicle through which the attorney may obtain a court-awarded fee.

In my opinion, this interpretation does not square with a plain reading of the False Claims Act, nor with general case law concerning federal fee-shifting statutes. The clear import of case law is that (1) statutory attorneys' fee awards are bestowed upon the party, not the attorney and (2) such awards are separate and distinct from the contractual relationship between the attorney and client.[1] Under fee-shifting statutes, a court must determine the reasonable compensation to be paid by the defendant for the time and effort expended by the prevailing party's attorney, "no more and no less." *Blanchard v. Bergeron*, 489 U.S. 87, 93, 109 S.Ct. 939, 944, 103 L.Ed.2d 67 (1989). The fee-shifting statute "controls what the losing defendant must pay, not what the prevailing plaintiff must pay his lawyer." *Venegas v. Mitchell*, 495 U.S. 82, 90, 110 S.Ct. 1679, 1684, 109 L.Ed.2d 74 (1990). Thus, the fee award may bear no relation to the actual fee paid by the prevailing party to his or her attorney. "What a plaintiff may be bound to pay and what an attorney is free to collect under a fee agreement are not necessarily measured by the 'reasonable attorney's fee' that a defendant must pay pursuant to a court order." *Id.* Consistent with precedent concerning other fee-shifting statutes, I do not believe the False Claims Act interferes with the contractual relations between attorney and client. *Id.* at 87, 110 S.Ct. at 1682–83 ("We have never held that § 1988 constrains the freedom of the civil rights plaintiff to become contractually and personally bound to pay an attorney a percentage of the recovery, if any, even though such a fee is larger than the statutory fee that the defendant must pay to the plaintiff.").

The analogy to the law of powers is consistent with this conclusion. A power over property is defined as a liberty or authority reserved by, or limited to, a person to dispose of real or personal property for his or her own benefit or the benefit of others. *Henderson v. Rogan*, 159 F.2d 855, 857 (9th Cir.), *cert. denied*, 331 U.S. 843, 67 S.Ct. 1534, 91 L.Ed. 1864 (1947). A power is "general" if it is capable of being exercised in favor of anyone, including the holder. A power is "special" if its exercise is restricted by the creating document to a designated class of persons other than the holder of the power. *See Paxton v. Commissioner of Internal Revenue*, 520 F.2d 923, 927–28 (9th Cir.), *cert. denied*, 423 U.S. 1016, 96 S.Ct. 450, 46 L.Ed.2d 388 (1975) (discussing powers of appointment); *Shedd v. Commissioner of Internal Revenue*, 237 F.2d 345, 349 (9th Cir.), *cert. denied*, 352 U.S. 1024, 77 S.Ct. 590, 1 L.Ed.2d 596 (1957) (same). The majority seems to analogize the False Claims Act fee provisions to the creation of a special power. Because the governing fee agreement in this case contains restrictions, I agree. However, the majority implies that this theory ought to apply in every case regardless of the provisions of the attorney-client contract. In my view, the more appropriate analogy is to that of a general power

---

1. Of course, fees must be "incurred" in order for the plaintiff to be eligible for compensation. In order to be "incurred" within the meaning of a fee-shifting statute, there must be an express or implied agreement that fees will be paid to a legal representative. *Phillips v. General Services Admin.*, 924 F.2d 1577, 1582–83 (Fed.Cir.1991). Thus, a pro se plaintiff is not entitled to a fee award. *Kay v. Ehrler*, 499 U.S. 432, 435–37, 111 S.Ct. 1435, 1436–38, 113 L.Ed.2d 486 (1991).

which would give the client control over the property unless restricted by contract. This reasoning is consistent with the False Claims Act and general case law concerning federal fee-shifting statutes.

With this difference noted, I concur.